CROWELL & MORING LLP
Dickerson M. Downing –*Admitted Pro Hac Vice*
(ddowning@crowell.com)
Julia K. Smith – *Admitted Pro Hac Vice*
(jksmith@crowell.com)
590 Madison Avenue, 20th Floor
New York, NY 10022-2545
Telephone: 212-223-4000
Facsimile: 213-223-4134

Michael Y. Kao (CSB No. 235263)
(mkao@crowell.com)
515 South Flower St., 40th Floor
Los Angeles, CA 90071
Telephone: 213-622-4750
Facsimile: 213-622-2690

*Attorneys for Plaintiff*
E.I. Du Pont De Nemours And Company

SHERIDAN ROSS P.C.
Benjamin B. Lieb – *Admitted Pro Hac Vice*
(blieb@sheridanross.com)
1560 Broadway, Suite 1200
Denver, CO 80202
Telephone: 303-863-9700
Facsimile: 303-863-0223

LAW OFFICE OF MUSTAFA ABDUL-RAHMAN INC.
Mustafa Abdul-Rahman (CSB No. 257251)
(m.abdul-rahman@lioninthelaw.com)
1100 South Hope Street, Suite 103
Los Angeles, CA 90015
Telephone: 213-550-4460
Facsimile: 213-908-5554

*Attorneys for Defendant*
Teflon Blood Incorporated

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E.I. DU PONT DE NEMOURS AND COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TEFLON BLOOD INCORPORATED, | Case No. CV10-3908-R<br><br>**CONSENT ORDER**<br><br>Judge: Honorable Manuel L. Real |

Defendant.

Plaintiff, E.I. du Pont de Nemours and Company ("Plaintiff" or "DuPont") brought this action against defendant Teflon Blood Incorporated ("Defendant" or "Teflon Blood") alleging that Defendant's use of the name and mark Teflon Blood infringed upon, diluted and otherwise violated DuPont's rights in the name and mark TEFLON® in violation of federal, state and common law. Defendant Teflon Blood has filed a counterclaim seeking declaratory relief and the declaration that the TEFLON® Mark has become generic and Plaintiff is barred from asserting claims of trademark infringement and/or dilution with respect to Teflon Blood's use of the word Teflon Blood.

Now on consent of both Plaintiff and Defendant and having agreed to the terms and conditions of this Consent Order, without any admission of liability or fault by either party, and subject to the approval of the Court,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1. As between the parties, DuPont is the exclusive owner of all rights to the TEFLON® name and mark and all names and marks incorporating the term TEFLON® and variations thereon ("TEFLON Mark.").

2. Teflon Blood acknowledges that the TEFLON® Mark is a famous mark that is valid and enforceable and not generic or descriptive of any goods or services.

3. Teflon Blood shall not challenge or dispute DuPont's exclusive rights in the TEFLON® Mark or any of the DuPont trademark applications or registrations for the TEFLON® Mark and further agree that it shall not make any statements disparaging the TEFLON® Mark or the goods or services sold under the TEFLON® Mark or DuPont's exclusive rights in the TEFLON® Mark or take any actions to dilute the TEFLON® Mark or state or suggest that the TEFLON® Mark is generic or descriptive or not a valid, enforceable and famous mark. Teflon Blood further

agrees that they shall not issue any substantive public statements about DuPont, the TEFLON® Mark or this lawsuit without the prior written approval of DuPont and otherwise will respond to any substantive inquiries regarding same by stating only that they have no comment.

4. Except as specifically permitted in Paragraph 6 below, Teflon Blood, its officers, directors, principals, agents, servants, affiliates, employees, attorneys, representatives, successors and assigns, and all those in privity or acting in concert or participation with it, are hereby immediately and permanently enjoined and restricted, directly and indirectly, from:

(a) Any and all use of the name and mark Teflon Blood and variations thereon ("Teflon Blood Mark") and the TEFLON® Mark and confusingly similar variations thereon (including marks that incorporate TEFLON® letter combinations including "TEF," "LON" and the like), for any purpose whatsoever in connection with their business activities including but not limited to use as a trademark, service mark, trade name, record label name, domain name or Internet keyword and meta-tag and also including any other use in conjunction with any product, service or business activity, any use in signs, point of sale displays, advertising and promotional materials, brochures and price lists and similar materials and any use in conjunction with any Internet activities and the operation of any Internet websites;

(b) The "purchase" of the Teflon Blood Mark or TEFLON® Mark or any confusingly similar variations thereon, as a keyword or trigger, as part of the "Google Ad Words" program or any other similar search engine or social network program that now exists or may be created in the future anywhere in the world, including the use of sponsored links in any Search Engine and the use of the Teflon Blood Mark and the TEFLON® Mark or confusingly similar variations thereon on the Internet or otherwise as a means to attract potential customers to its

1 | Internet website or to any Internet website or location offering products or services for sale;

(c) The registration or attempted registration of the Teflon Blood Mark and TEFLON® Mark and confusingly similar variations thereon as a trademark, service mark, trade name, business name, domain name, common law mark or otherwise in the United States Patent and Trademark Office or in any other federal, state or foreign registry as well as in any trade or business listing or printed or online phone or other listing for trademarks, service marks, trade names or domain names that currently exists and may be created the future and similar registrations for listings of trademarks and business names ("Registry Listing");

(d) Any and all use of the Teflon Blood Mark and TEFLON® Mark and confusingly similar names and marks in connection with any social media sites and activities on the Internet or elsewhere; and

(e) Engaging in any course of conduct likely to cause confusion, deception or mistake or injure DuPont's business reputation with respect to the TEFLON® Mark or dilute the TEFLON® Mark or appropriate the goodwill and reputation of said marks or lead to the passing off of Defendant's products and services as TEFLON® products and services.

5. Teflon Blood agrees that except as provided below, it shall immediately and permanently withdraw any pending applications or registrations that it may own for the Teflon Blood Mark or any other variation of the TEFLON® Mark as a trademark, service mark, trade name, business name, domain name, common law mark or otherwise in the United States Patent and Trademark Office ("USPTO") or in any state, local or foreign country or domain name registry ("Registry") and, further agree not to seek to register, at any time in the future, any such name or mark in any such Registry as now exists or may be created.

6. Notwithstanding the above, it is agreed that Teflon Blood shall have until November 1, 2011 to take the following actions with the understanding that

this provision is intended to provide Teflon Blood a reasonable amount of time to phase out and wind down its use of the Teflon Blood Mark, *as currently used*, and not to expand upon such current use:

(a) Exhaust or destroy all inventory and materials in its possession as of the Effective Date bearing or referring to the Teflon Blood or TEFLON® Marks;

(b) Cease the operation of the website sites at *www.teflonblood.com* and *www.teflonbloodrecords.com*, as currently operated, and abandon those domain names or otherwise allow the domain names to expire through non-renewal;

(c) Cease and abandon all use of the name Teflon Blood as a business name and effectuate the legal name change from Teflon Blood to such other name new names or names as Teflon Blood might adopt that do not include the TEFLON® Mark or any variations thereon (including marks that incorporate TEFLON® letter combinations including "TEF," "LON" and the like) or anagrams thereof and any other trademark owned by DuPont or any confusingly similar variations thereon "(New Name)";

(d) Cease all business activities under the Teflon Blood Mark and all use thereof;

(e) Inform all vendors, suppliers and contractual partners of the name change from Teflon Blood to a New Name;

(f) Change all Teflon Blood listings in phone directories, trade directories and in all contracts and the like from Teflon Blood to a New Name or otherwise discontinue the listing; and

(g) Cease the promotion of any live performances under the Teflon Blood name of any performing artists currently under contract to Teflon Blood, including Black Judah; and

(h) Issue any public statements as Teflon Blood may wish to make announcing the name change from Teflon Blood to a New Name, including any

advertising indicating that the company operating under the New Name is formerly known as Teflon Blood provided that such public statements and advertising are not distributed, displayed or intended to run after November 1, 2011.

7. Teflon Blood through its successor-in-interest or if there is no successor-in-interest then one of more of its principals or officers or directors with knowledge shall provide a written report to DuPont on or before November 10, 2011 confirming that the Company has ceased all use of the Teflon Blood and TEFLON® Marks and and all related marks, names, trade names and domain names and is in complete compliance with the terms of the parties confidential Settlement Agreement. Said report shall be sent to the following designated DuPont Representative ("DuPont Representative"):

>Giselle Ruiz Arthur
>Corporate Trademark Counsel
>DuPont Legal - Trademark & Copyright Group
>4417 Lancaster Pike
>Barley Mill Plaza 25-2310
>Wilmington, DE, 19805
>Phone (302) 992-5839
>Fax (302) 355-1439

8. It is understood that the provisions set forth in Paragraph 7 are intended to permit Teflon Blood a reasonable amount of time to phase out and wind down its existing business activities under the Teflon Blood name in an orderly manner and not to expand upon its current activities under the Teflon Blood name. It is therefore acknowledged, and Teflon Blood agrees that to the extent it creates or places any advertising or promotional materials after the Effective Date or release or distribute any new music in any format, including any music recorded by the artists known as Black Judah and specifically including the work referred to either as "California Green" or "Roots World Order" or otherwise promote the live performances or recordings of any artists not currently under contract with Teflon Blood, the use of the Teflon Blood and TEFLON® Marks is prohibited in connection with such activity by Paragraph 4 of this Order (except as provided in

CROWELL & MORING LLP
ATTORNEYS AT LAW

CONSENT ORDER
CASE NO. CV10-3908-R

paragraph 6(h) ) and such activity may not be done under the Teflon Blood or TEFLON® Marks but rather shall be done in connection with a New Name. It is further agreed that any and all use of Teflon Blood or any TEFLON® Mark and any variations thereon shall be permanently ceased as of November 1, 2011.

9.  Notwithstanding the above, nothing in this Order shall require the Teflon Blood Principal to remove or conceal any current tattoo or body art that had been imprinted on his body for the TEFLON® Mark as of the Effective Date of this Agreement.

10. Teflon Blood agrees that it shall not adopt, use or seek to register any name or mark in the future as a trademark, service mark, trade name, domain name or otherwise that is confusingly similar to any name or mark owned by DuPont.

11. DuPont agrees that it shall not object to the use and registration by Teflon Blood of the name and mark TBlood or variations thereon or Atomic Records Incorporated and the continued use of the "Heart and Vest Logo" currently used by Teflon Blood, as shown below, provided Teflon Blood complies with all other terms.

12. In the event of any differences, dispute or question arising under this Order, the parties will first endeavor in good faith and for a period of no less than thirty (30) calendar days to resolve the matter amicably amongst themselves. During this time period, no party may initiate any legal action against the other regarding the matter. Upon termination of this thirty (30) day period either party may take such action, including the institution of legal action against the other party without further notice.

13. All parties shall bear their own costs.

14. This Court has jurisdiction over the parties and the subject matter of the instant action and shall retain jurisdiction for the purposes of enforcement of this Consent Order.

15. This action is hereby DISMISSED WITH PREJUDICE with respect to all claims and counterclaims made in this action by the respective parties and all affirmative defenses made by either party shall be deemed to be withdrawn subject to their respective individual compliance with the terms of this Consent Order.

Respectfully submitted,
CROWELL & MORING LLP

Dated: April __, 2011            By: _____
                                      Dickerson M. Downing (*Pro Hac Vice*)
                                      Julia K. Smith (*Pro Hac Vice*)
                                      Michael Y. Kao (CSB No. 235263)

                                      *Attorneys for Plaintiff*
                                      E.I. du Pont de Nemours and Company

LAW OFFICE OF MUSTAFA ABDUL-RAHMAN INC.

Dated: April __, 2011            By: _____
                                      Mustafa Abdul-Rahman (CSB No. 257251)
                                      Benjamin B. Lieb (*Pro Hac Vice*)
                                      Ian R. Walsworth (*Pro Hac Vice*)

                                      *Attorneys for Defendant*
                                      Teflon Blood Incorporated

SO ORDERED:

Dated: April 26, 2011            _____
                                      Honorable Manuel L. Real
                                      U.S. District Court Judge